UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARCOS DE LOS SANTOS,

                    Petitioner,

v.

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

                    Respondent.

Case No. 07-CV-7569 (KMK) (PED)

ORDER ADOPTING REPORT
AND RECOMMENDATION

---

KENNETH M. KARAS, District Judge:

Marcos De Los Santos ("Petitioner"), proceeding pro se, filed a petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254, challenging his June 24, 1997 conviction for Murder in the Second Degree.[1] Petitioner originally filed his Petition in the Eastern District of New York on June 18, 2007, and it was transferred to this Court on August 27, 2007.[2] The Court referred this case to Magistrate Judge Paul E. Davison, pursuant to 28 U.S.C. § 636(b). (Dkt. No. 14.) Magistrate Judge Davison issued a Report and Recommendation ("R&R"), recommending that the habeas petition be dismissed as untimely for Petitioner's failure to commence the proceeding within the one-year limitation period set forth in

---

[1] Petitioner pled guilty to Murder in the Second Degree, N.Y. Penal Law § 125.25(1), as part of a negotiated plea agreement to several charges stemming from the armed robbery of a convenience store in Yonkers, New York. (Report and Recommendation ("R&R") 2 n.3.)

[2] Upon receipt of the Petition, the Honorable Kimba M. Wood, then Chief District Judge, issued an order to show cause why the Petition should not be dismissed as barred by the limitations period specified in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). (Dkt. No. 1.) Petitioner filed an Affirmation on October 24, 2007. (Dkt. No. 2.) Respondent then filed a motion to dismiss the Petition, (Dkt. No. 9), and a supporting affidavit in opposition to the Petition, (Dkt. No. 8), on March 18, 2008.

28 U.S.C. § 2244(d). (Dkt. No. 20.) For the reasons stated below, the Court adopts the R&R and dismisses the Petition.

## I. Background

After pleading guilty to Murder in the Second Degree, (Respondent's Exhibits in Opposition to Petition ("Resp. Ex.") Ex. 4), Petitioner was sentenced on July 29, 1997 to an indeterminate term of state imprisonment of fifteen years to life, (Resp. Ex. 5). Petitioner did not timely file a direct appeal, which under New York law, must be filed within 30 days of sentencing.[3] *See* N.Y. Crim. Proc. Law § 460.10(1)(a) ("A party seeking to appeal from a judgment or a sentence . . . must, within thirty days after imposition of the sentence . . . file with the clerk of the criminal court . . . a written notice of appeal . . . ."). In April 2004, Petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, alleging ineffective assistance of counsel.[4] (Resp. Ex. 14 ("§ 440.10 Motion").) On August 17,

---

[3] Petitioner claims that he and his mother asked defense counsel to file a notice of appeal within the 30-day limit, but that counsel failed to do so. (Resp. Ex. 14 ("§ 440.10 Motion") ¶ 59.) Inexplicably, Petitioner's counsel claims in a 1998 letter to the Grievance Committee for the Ninth Judicial District that "[a] notice of appeal was timely filed by [him] with the Westchester County Clerks' office." (§ 440.10 Motion at Ex. 4.) However, there is no record of that appeal having been filed. On December 17, 1997, 141 days after his sentence, Petitioner filed a notice of appeal. (Resp. Exs. 6-7.) The Appellate Division, Second Department, deemed this motion as a request for an extension of the time to take a direct appeal. A unanimous panel of the Appellate Division denied that motion on February 5, 1998. (Resp. Ex. 9.) A subsequent request to reargue that motion was denied by a (different) panel of the Appellate Division on March 20, 1998. (Resp. Ex. 12.) The New York Court of Appeals denied Petitioner's application to appeal that decision on May 12, 1998. (R&R 2 n.4; Resp. Ex. 13.)

[4] Petitioner alleges that counsel "did no investigation as far as the facts of the case . . . [and] [a]t no time . . . inform[ed] [Petitioner] of the plea's deportation consequences." (§ 440.10 Motion ¶ 10.) Petitioner also claims that he insisted on his innocence and that counsel "bull[ied]" him into pleading guilty "when [Petitioner's] resistance was the lowest as a direct result of the powerful medication which compelled [Petitioner] to submit into his defense counselor's wishes." (*Id.* ¶ 11.)

2

2004 the Westchester County Court, denied the motion. (Resp. Ex. 17; R&R 3.) On September 15, 2004, Petitioner requested leave of the Appellate Division under New York Criminal Procedure Law § 460.15 to appeal the denial of the § 440.10 motion. (Resp. Ex. 18.) This motion for leave to appeal was denied on February 3, 2006. (Resp. Ex. 21; R&R 3 n.6.)[5] Petitioner filed the instant Petition for Writ of Habeas Corpus on June 18, 2007.[6]

## II. Discussion

### A. Standard of Review

#### 1. Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).[7] Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days if

---

[5] Petitioner alleges that the Appellate Division did not timely notify him of the denial of his § 460.15 motion, and that he did not receive notice of its denial until February 8, 2007, in response to a letter he had sent to the court. (Petitioner's Affirmation in Support of Writ of Habeas Corpus Petition ("Pet. Aff.") at 5, Ex. D.)

[6] Petitioner has filed a second motion to vacate the judgment of conviction under New York Criminal Procedure Law § 440.10, again raising an ineffective assistance of counsel claim, which apparently remains pending in state court. (R&R 3.)

[7] Because unpublished decisions are not available in the federal reporters, and thus not easily accessible to the public, copies of the unpublished decisions cited by the Court are attached to this Order.

3

service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C)-(F), *see* Fed. R. Civ. P. 6(d).

Where a party submits timely objections to a report and recommendation, as Petitioner has here, the district court reviews de novo the parts of the report and recommendation to which the party objected.[8] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). Petitioner specifically objects to the R&R's findings that his "mental defect," lack of education and knowledge of English, and the delayed notification of the denial of his § 460.15 motion do not constitute "exceptional circumstances" that warrant equitable tolling of the AEDPA limitation period. (Petitioner's Statement of Objections to Magistrate-Judge Rep[or]t and Recommendation ("Pet. Obj.") 4, 6-7 (Dkt. No. 22.).)[9]

### 2. Review of Petition for Habeas Corpus

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, imposes a one-year statute of limitations within which a petitioner seeking federal court review of a state court conviction must file a petition for habeas corpus. *See* 28 U.S.C. § 2244(d).

---

[8] The Court granted Petitioner an extension of 45 days to file his objections to the R&R. (Dkt. No. 21.)

[9] Petitioner does not specifically object to the R&R's findings that his Petition is not governed by 28 U.S.C. § 2244(d)(1)(B), (R&R 6), and that his argument of "actual innocence" does not warrant equitable tolling, (R&R 10). The findings in the R&R on these points are not clearly erroneous or contrary to law, and they are adopted by the Court.

4

Under § 2244(d)(1)(A), the one-year period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" *Id.* § 2244(d)(1)(A). During the course of the one-year period, if the petitioner files an application for collateral or post-conviction review, the limitation period is tolled during the time that the claim is pending. *See id.* § 2244(d)(2). Furthermore, the Supreme Court has held that the AEDPA statute of limitations is not jurisdictional, and is thus subject to equitable tolling in appropriate cases. *See Holland v. Florida*, 130 S. Ct. 2549, 2560-62 (2010). A petitioner is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (internal quotation marks omitted).

### B. Analysis

#### 1. Limitations Period

In order to determine whether the Petition writ was timely filed, it is necessary to establish the date on which the one-year limitation period began to run. AEDPA specifies that a judgment becomes final by "the conclusion of direct review or the expiration of time for seeking such a review." 28 U.S.C. § 2244(d)(1)(A). Petitioner had 30 days from the date of his sentencing to seek direct appellate review, and as discussed above, Petitioner failed to timely file a notice of appeal under New York Criminal Procedure Law § 460.10. Therefore, Petitioner's judgment was considered final for the purposes of beginning the one-year limitation period on August 28, 1997, 30 days after his sentencing. *See Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (per curiam) (affirming that the expiration of the 30-day limit to file appeal marks the beginning of the AEDPA limitations period (citing N.Y. Crim. Proc. Law. § 460.10(1)(a))). Barring any collateral

attack in state court within that year, the statute of limitations would have run on August 28, 1998.

Although Petitioner did commence a collateral attack by filing a § 440.10 motion in April 2004, such collateral attacks do not reset the statute of limitations. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Diaz v. Kelly*, 515 F.3d 149, 152 (2d Cir. 2008) (finding that where petitioner filed a § 440.10 application after the one-year statutory period had already expired, the "subsequent state court collateral attack [did] not toll the federal limitations period"); *Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state petition must be both 'properly filed' and 'pending' during the tolling period."); *Florio v. Cuomo*, No. 10-CV-0998, 2010 WL 5222123, at *6 (S.D.N.Y. Nov. 16, 2010) ("Filing of the C.P.L. § 440.10 application neither restarts nor tolls the limitations period because it was filed *after* the statute of limitations expired." (emphasis in original)), *adopted by* 2011 WL 223217 (S.D.N.Y. Jan. 24, 2011); *Jones v. Walsh*, No. 06-CV-225, 2007 WL 4563443, at *2 (S.D.N.Y. Dec. 27, 2007) (noting that § 440.10 motion did not restart the statute of limitations). Given that Petitioner did not file a collateral attack in state court *within* the one-year limitation period, the limitation period was never tolled under § 2244(d)(2), and any habeas petition filed after August 28, 1998 was untimely.[10] In fact, Petitioner concedes in his Objections, that the one-year time limitation began to run 30 days after he was sentenced and that he failed to file a notice of appeal.

---

[10] Although Petitioner did file a late notice of appeal within the one-year period (on December 17, 1997), such motions also do not restart the AEDPA limitation period. *See Bethea*, 293 F.3d at 579 ("[W]e hold that the filing of a motion to extend the time to appeal or to file a late notice of appeal does not 'restart' the AEDPA limitation period."). And, even if the state court's consideration of this late-filed appeal (which was finalized in 1998) somehow tolled the AEDPA limitation period, the instant Petition, filed in 2007, is still well outside the one-year period.

6

(Pet. Obj. 4 ("As the Magistrate correctly illustrates, De Los Santos concedes the fact his one-year time limitation began to run 30 days after he failed to file his notice of appeal with the [A]ppellate [D]ivision . . . .").)

### 2. Equitable Tolling

The Supreme Court and the Second Circuit have acknowledged that circumstances exist that would warrant equitably tolling the AEDPA limitation period. *See Holland*, 130 S. Ct. at 2562; *Diaz*, 515 F.3d at 153; *Casas v. United States*, No. 10-CV-4341, 2010 WL 5415886, at *2 (S.D.N.Y. Dec. 29, 2010). For equitable tolling to be available, a petitioner must establish that some "extraordinary circumstance stood in his way and prevented timely filing," and that he has been "pursuing his rights diligently." *Holland*, 130 S. Ct. at 2562 (citation and internal quotation marks omitted). "The AEDPA limitations period will only be tolled in rare and exceptional circumstances and where the petitioner demonstrates a causal relationship between the extraordinary circumstances . . . and the lateness of his filing[.]" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (alterations omitted) (citations and internal quotation marks omitted). Petitioner bears the burden of demonstrating that equitable tolling is justified, and he must provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). Although pro se filings are held to a more lenient standard, Petitioner still must clearly establish the elements necessary for equitable tolling. *See Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007).

Petitioner, in his Objections, argues that the R&R erred by finding that he is not entitled to equitable tolling of the AEDPA statute of limitations. Petitioner claims that equitable tolling is warranted because (1) he was heavily medicated during the pendency of his direct appeal, and

7

suffers from viral meningitis, making him a mentally challenged inmate; and (2) the state court intentionally obstructed his access to this Court by not notifying him of the decision denying his § 460.15 motion within a reasonable time. (Pet. Obj. 4.) Petitioner also argues that the fact he does not speak English and has little education are additional factors which should warrant equitable tolling. (*Id.* at 6.)

### a. Mental Health Challenges

Petitioner's first claim, that "he suffers from viral meningitis, making him a mentally challenged inmate," (*id.* at 4), does not, per se, entitle him to equitable tolling. *See Bolarinwa*, 593 F.3d at 232 ("Mental illness does not toll a filing deadline *per se*; determining whether equitable tolling is warranted in a given situation is a highly case-specific inquiry." (internal quotation marks omitted)). Although courts have found that mental illness can warrant equitable tolling, *see, e.g., id.* at 228 (holding that mental illness can serve as a ground for equitable tolling); *Benn v. Greiner*, 275 F. Supp. 2d 371, 374 (E.D.N.Y. 2003), it is well established that the burden is on the petitioner to show with specificity how "[his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights," *Boos*, 201 F.3d at 185; *Victorial*, 477 F. Supp. 2d at 654 ("A petitioner's conclusory and vague claim, without a particularized description . . . is manifestly insufficient to justify any further inquiry into tolling." (internal quotation marks omitted)).

Petitioner relies heavily on *Benn v. Greiner*, 275 F. Supp. 2d 371 (E.D.N.Y. 2003), to argue that equitable tolling is warranted in his case. (Pet. Obj. 4-5.) In *Benn*, the petitioner offered a letter from the clinical director of Sing Sing correctional facility stating that "Petitioner required treatment, including antipsychotic medication for a condition characterized by auditory hallucinations, paranoid thinking, depression and anxiety." *Benn*, 275 F. Supp. 2d at 373. In

8

addition, the petitioner in *Benn* allowed the court to obtain his prison psychiatric records, which indicated "that petitioner suffers from depression and schizophrenia. He is prone to distracting auditory hallucinations. He has been confined to the mental health ward of Sing Sing prison for much of the duration of his sentence." *Id.* Relying on this information, plus the fact that "[p]etitioner's state collateral proceedings and [] federal habeas applications were initiated with the help and at the behest of fellow inmates," the court found that the petitioner was entitled to equitable tolling. *Id.* at 374.

In this case, for Petitioner to be entitled to equitable tolling he would have to show that his mental illness "severely impair[ed]" his ability to pursue his legal rights from the period beginning August 28, 1997, when the limitation period began to run, until June 18, 2007, when he filed this Petition.[11] *See Bolarinwa*, 593 F.3d at 232. In support of his argument for equitable tolling, Petitioner has offered the fact that he has been housed in the Mid-Hudson Psychiatric Center and "lives in Green Haven's AVP Program which is designed to help mentally challenged inmates cope with daily living skills." (Pet. Obj. 5; *see also* Petitioner's Reply Mem. of Law ("Pet. Reply") 3, Ex. A.) However, there are no dates listed for the time period in which Petitioner was housed in these psychiatric units.

Petitioner also submits in his Reply numerous pages of psychiatric records, which consist of handwritten notes from the therapists who had contact with him at Mid Hudson Psychiatric Center, Downstate Correctional Facility, and Green Haven Correctional Facility. (Pet. Reply Ex. B ("Medical Records").) The records describe Petitioner as a "mild[ly] retarded male . . . who

---

[11] As noted, because the one-year limitation period had already expired before Petitioner filed the § 440.10 motion in 2004, "this subsequent state court collateral attack does not toll the federal limitations period." *Diaz*, 515 F.3d at 152.

9

attends AVP on a regular basis." (Medical Records at unnumbered page 4; *id.* at unnumbered page 24 ("Cognitive functioning suggests intellectual functioning to be well within the retarded range."). *But see id.* at unnumbered page 50 ("Patient is thought to be retarded but recent testing doesn't support that totally.").) The earlier reports (1998-1999) suggest that Petitioner periodically suffered from episodes of major depression and describe other symptoms of mental illness, such as hallucinations. (*See id.* at unnumbered pages 14, 18, 24, 30, 42. *But see id.* at unnumbered pages 50, 52 (report from 1998 describing Petitioner as "[a]lert []. Logical. Coherent. No halluc[inations]. No delusions. No evidence of major depression.").) But, beginning in about 1999, the reports state in several places that Petitioner was gaining control over his depression, was cooperative and friendly, and was responding well to the AVP Program. (*See id.* at unnumbered pages 4, 6, 10, 34-36, 53, 72-74, 80, 90, 97, 102.) The reports also mention that for at least some time in 2001, Petitioner was housed in the general population, (*id.* at unnumbered page 97), and that "when not actively depress[ed] he can function well in all work assignments," (*id.* at unnumbered page 102).[12]

While these records show that Petitioner has impaired cognitive abilities and has suffered from some form of depression, he has failed to provide a "particularized description" of how his

---

[12] The records that Petitioner has provided do not continue past 2002. However, Petitioner offers the fact that he has been on "medication heavily since at least 1992," which includes "Zoflt [sic] 50 mg, Prozac, Navane, Depalene, and Evalil." (Pet. Reply 3.)

10

mental illness prevented him from pursuing his legal rights.[13] *See Boos*, 201 F.3d at 185. "A petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling." *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000). Instead, Petitioner bears the burden of showing a *causal connection* between the alleged mental illness and his inability to exercise his legal rights during the period for which he is seeking equitable tolling. *See Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir. 2000) (explaining that petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing").

While Petitioner alleges that he has been housed in the psychiatric centers while at Westchester County Jail and at Green Haven Correctional Facility, (Pet. Reply 3), this fact is insufficient to warrant equitable tolling unless Petitioner clearly demonstrates that being housed in these facilities prevented him from exercising his legal rights. Petitioner has made no such showing. *See Jean-Louis v. Greiner*, No. 02-CV-6326, 2003 WL 1807144, at *3 (S.D.N.Y. Apr. 4, 2003) ("[P]etitioner's allegations that his illness led him to be confined or committed to psychiatric facilities within the New York state prison system do not justify tolling."); *Rhodes*, 82 F. Supp. 2d at 170 (finding that inmate who suffered severe complications from AIDS and who had been hospitalized several times during the one-year limitation period failed to present evidence to show that he was unable to pursue his legal rights during the periods when he was not hospitalized). Moreover, Petitioner's psychiatric records indicate that at least in 2001, Petitioner

---

[13] Petitioner states that "the counselors in the AVP program here at Green Have[n] are willing to discuss his mental challenges with the court if they were ordered to do so by the Court." (Pet. Obj. 6.) However, given the psychological records that the Court has already reviewed, additional letters from the AVP counselors are not necessary to reach the conclusion that equitable tolling is not warranted.

11

was living in the general population at Green Haven, (Medical Records at unnumbered page 97), and "[P]etitioner does not allege that he was incapacitated or denied access to legal materials when he was not in the [AVP program]." *Jean-Louis*, 2003 WL 1807144, at *4. Petitioner's records also reveal that by 1999, he was suffering from fewer depressive episodes and that in 2000, a therapist noted that when not actively depressed, he was able to function well in all work assignments. (Medical Records at unnumbered page 102.) These comments by the therapists evaluating Petitioner on a regular basis belie his claim that mental illness left him incapacitated and unable to pursue his legal claims. Therefore, Petitioner cannot use his stints at prison psychiatric facilities as a justification for equitable tolling.

Petitioner also lacks documentation that his mental illness prevented him from "act[ing] with reasonable diligence *throughout* the period he seeks to toll." *Smith*, 208 F.3d at 17 (emphasis added). Petitioner's psychological records stop during 2002 and he does not account for the period from 2002 through 2007, years during which he needs to demonstrate that his mental illness prevented him from filing his Petition. Furthermore, "[t]he statement that [P]etitioner takes psychotropic medication does not satisfy his burden to show that this medication left him incapacitated or otherwise unable to pursue his rights." *Jean-Louis*, 2003 WL 1807144, at *3 (citing *Cannon v. Kuhlman*, No. 99-CV-10101, 2000 WL 1277331, at *2 (S.D.N.Y. Sept. 7, 2000)); *Mendez v. Artuz*, No. 99-CV-2472, 2000 WL 991336, at *2 (S.D.N.Y. July 19, 2000) (denying tolling where petitioner alleged that he took eleven pills daily). Petitioner has not clearly demonstrated the effects that these medications have had on him, and has not shown any causal connection between his taking of medication and his failure to timely file his Petition.

12

Most significantly, however, Petitioner has actively pursued his legal rights in the New York State courts, first by filing a late notice of appeal in 1997, and then by filing a § 440.10 motion in 2004. Petitioner has not addressed how he was able to file, pro se, the notice of appeal in December 1997, the petition the Appellate Division for reargument of that motion in February 1998, and then request leave from the New York State Court of Appeals to appeal from the decision denying reargument in light of his purported medical issues. (R&R 2 n.4.) Petitioner took these legal actions during the one-year AEDPA limitation period, clearly demonstrating that in fact no "extraordinary circumstance stood in his way" which prevented timely filing of a habeas petition. *Holland*, 130 S. Ct. at 2562. Indeed, courts have regularly held that a petitioner is not entitled to equitable tolling when his conduct indicates that he was able to investigate and pursue other legal avenues during the time period at issue. *See Florio*, 2010 WL 5222123 at *12 ("Even if [petitioner] was so debilitated by his mental illness during the one-year period after his conviction became final, his condition clearly improved . . . when he filed the [§ 440.10] motion to vacate, and any period of tolling would have restarted on that date."); *Victorial*, 477 F. Supp. 2d at 655 (noting that where petitioner "merely state[d] that he ha[d] been diagnosed with a mental disorder," and did not offer any explanation as to why he could defend himself in his original trial, file two appeals, and institute the instant petition, but could not timely file his habeas petition, petitioner could not demonstrate extraordinary circumstances). Petitioner has demonstrated that he was able to exercise his legal rights in 1997, 1998, and again in 2004, yet he did not file the Petition in this Court until 2007.[14] Petitioner therefore has not met the "high

---

[14] Petitioner claims that he was able to file this Petition only with the help of inmate law clerks. (Pet'r's Reply Decl. ¶¶ 15-19, Ex. A.) However, this information is insufficient to address how he was able to file his state post-conviction motions, yet was unable to timely file his federal petition.

13

standard" of showing that he was unable to pursue his legal rights during the one-year period following the finality of his conviction, *see Rhodes*, 82 F. Supp. at 169, and is not entitled to equitable tolling of the AEDPA limitation period.

These same facts cut against Petitioner's argument that he is entitled to equitable tolling because of his lack of education and inability to speak English. While the Second Circuit has held that inability to speak English may, in some circumstances, be a basis for equitable tolling under AEDPA, "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency." *Diaz*, 515 F.3d at 154. Petitioner has not alleged what efforts, if any, were made during the limitation period to obtain assistance from a Spanish-speaker to assist in the preparation of his Petition. *See id.* (rejecting equitable tolling where petitioners made "no allegation of any efforts to contact anyone [inside or] outside the prison who could assist in making them aware, in their native languages, of legal requirements for filing a habeas petition"); *Adames v. Artus*, No. 10-CV-398, 2011 WL 813627, at *6-7 (S.D.N.Y. Jan. 20, 2011) (rejecting equitable tolling for lack of diligence when petitioner argued that he did not timely file because there were no bi-lingual inmate law clerks available to help with the petition), *adopted by* 2011 WL 814631 (S.D.N.Y. Mar. 8, 2011). In fact, Petitioner states that he "has always been assisted by law clerks working at the prison law library." (Pet. Aff. 7.) Furthermore, the fact that Petitioner was able to file submissions with state appellate courts in 1997 and 1998 and the § 440.10 motion in 2004 suggests that he did have some form of assistance (or that he did not need such assistance), but that he just did not avail himself of that assistance to file a federal petition.

### b. Delayed Notification of Denial of § 460.15 Motion

Petitioner also argues that he is entitled to equitable tolling because "the [New York State] court intentionally obstructed him access to the [C]ourt by not informing him of a decision [regarding the § 460.15 motion appealing the denial of his April 2004 § 440.10 motion] in a reasonable time."[15] (Pet. Obj. 4.) Petitioner claims that the court's negligence in failing to inform him that the § 460.15 motion had been denied is an extraordinary circumstance that justifies equitable tolling. (*Id.* at 7.)

Although Petitioner concedes in his Objections that his one-year time limitation began to run when he failed to file his direct appeal within 30 days of his sentencing, (Pet. Obj. 4), he also claims that his conviction should not have become final until he learned of the denial of the September 15, 2004 § 460.15 motion in February 2007, (*id*). Petitioner's argument is based on a misunderstanding of New York law. As the R&R correctly explains, in New York, if no direct appeal of a conviction is filed within 30 days, that conviction becomes final. (R&R 5 (citing *Bethea*, 293 F.3d at 578).) Therefore, because Petitioner did not file a direct appeal of his July 29, 1997 conviction within 30 days, his conviction became final on August 28, 1997, and the AEDPA one-year limitation period thus began to run on that day. (R&R 6.)[16]

---

[15] Petitioner filed a § 440.10 post-conviction motion to vacate his judgment in April 2004. (§ 440.10 Motion.) The motion was denied on August 17, 2004. (Resp. Ex. 17.) In September 2004, Petitioner moved under § 460.15 for leave to appeal the denial to the Appellate Division. (Resp. Ex. 18; Pet. Aff. 4.) Petitioner sent several letters to the Appellate Division inquiring about the status of the motion. (Pet. Aff. 4-5, Ex. A-D.) On February 8, 2007, Petitioner was notified by the Appellate Division that his motion had been denied on February 3, 2006. (Resp. Ex. 21; Pet. Aff. 5, Ex. D.)

[16] Magistrate Judge Davison liberally construed Petitioner's Affirmation to argue that § 2244(d)(1)(B) governs the timeliness of his Petition, and that the one year time period did not begin to run until February 2007 because of the state court's failure to notify him of the denial of his § 460.15 motion. (R&R 6.) Section 2244(d)(1)(B) provides that the limitation period shall

15

Furthermore, Petitioner's delayed notification of the denial of the § 460.15 motion has no bearing on the AEDPA limitation period, as the limitation period had already expired well before he filed the § 440.10 motion in 2004. As discussed earlier, it is well settled that the filing of an application for state post-conviction review does not restart the one-year limitation period under § 2244(d)(1)(A). *See Diaz*, 515 F.3d at 152 (finding that where petitioner filed a § 440.10 application after the one-year statutory period had already expired, the "subsequent state court collateral attack [did] not toll the federal limitations period"); *Florio*, 2010 WL 5222123, at *6 ("Filing of the C.P.L. 440.10 application neither restarts nor tolls the limitations period because it was filed *after* the statute of limitations expired." (emphasis in original)). Petitioner's one-year limitation period expired on August 28, 1998, therefore the delayed notification of denial of the § 460.15 motion does not constitute an "extraordinary circumstance," because his Petition was time barred before he ever even filed the § 440.10 motion. And, finally, Magistrate Judge Davison correctly concluded that a mistake by a petitioner about filing deadlines, even when he is proceeding pro se, is not a basis for equitable tolling under these circumstances. (R&R 8 (citing *Hickey v. Senkowski*, No. 02-CV-1437, 2003 WL 255319, at *4 (S.D.N.Y. 2003);) *see also Simmons v. Brown*, No. 08-CV-01425, 2011 WL 2133844, at *8 (E.D.N.Y. May 26, 2011) ("[T]he mere fact that a petitioner is proceeding *pro se* and may be ignorant of the law are not sufficient grounds for equitable tolling.").

---

run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). However, Magistrate Judge Davison correctly concluded that § 2244(d)(1)(B) does not apply here "because the outcome of Petitioner's § 460.15 motion was never an impediment to the filing of his Petition." (R&R 6.)

16

### 3. Effect of the Supreme Court's Decision in *Padilla*

Notwithstanding Petitioner's untimely filing, the Court notes that Petitioner alleges ineffective assistance of counsel based on counsel's failure to inform him of deportation consequences resulting from his guilty plea. (Petition at 4.) In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that the Sixth Amendment requires that counsel inform his or her client whether a guilty plea carries a risk of deportation. *Id.* However, the Supreme Court has just clarified that it "announced a new rule in *Padilla*," and "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013). Therefore, because Petitioner's conviction became final before the 2010 *Padilla* decision, the alleged failure of his attorney to advise him of the immigration consequences is no basis for an ineffective assistance of counsel claim.

## III. Conclusion

For the reasons stated above, the Court finds that Petitioner's claims do not warrant habeas relief. Accordingly, it is

ORDERED that the Report and Recommendation dated September 9, 2010 is ADOPTED to the extent it is consistent with this Order. It is further

ORDERED that Petitioner's writ of habeas corpus is DISMISSED. It is further

ORDERED that because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000), and the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. It is further

ORDERED that the Clerk of the Court is respectfully requested to enter a judgment in favor of Respondent and close this case.

SO ORDERED.

Dated: White Plains, New York
March 22, 2013

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List (by Mail):

Marcos De Los Santos
#97-A-5440
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582
Pro Se

John James Sergi, Esq.
Joseph M. Latino, Esq.
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601


Copy To:

Hon. Paul E. Davison
United States Magistrate Judge